**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.M.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.L.C.R., FATHER | : | No. 3535 EDA 2016 |

Appeal from the Decree Entered October 14, 2016
In the Court of Common Pleas of Philadelphia County
Family Court Juvenile Division at No(s): CP-51-AP-0000026-2015,
CP-51-DP-0002367-2013, FID: 51-FN-004216-2013

BEFORE: GANTMAN, P.J., OTT, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 28, 2017**

Appellant, J.L.C.R. ("Father"), appeals from the decree entered in the Philadelphia County Court of Common Pleas Family Court Juvenile Division, which granted the petition of the Department of Human Services ("DHS") for involuntary termination of Father's parental rights to his minor child, K.M.G. ("Child"). We affirm.

In its opinion, the Juvenile Court fully and correctly set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Father raises two issues for our review:

> WHETHER THE [JUVENILE] COURT COMMITTED REVERSIBLE ERROR WHEN IT INVOLUNTARILY TERMINATED FATHER'S PARENTAL RIGHTS WHERE SUCH DETERMINATION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE UNDER THE ADOPTION ACT, 23 PA.C.S.A. § 2511(a)(1) AND (2)?

_____

*Retired Senior Judge assigned to the Superior Court.

WHETHER THE [JUVENILE] COURT COMMITTED REVERSIBLE ERROR WHEN IT INVOLUNTARILY TERMINATED FATHER'S PARENTAL RIGHTS WITHOUT GIVING PRIMARY CONSIDERATION TO THE EFFECT THAT THE TERMINATION WOULD HAVE ON THE DEVELOPMENTAL, PHYSICAL, AND EMOTIONAL NEEDS OF CHILD AS REQUIRED BY THE ADOPTION ACT, 23 PA.C.S.A. § 2511(B)?

(Father's Brief at 7).

Appellate review of termination of parental rights cases implicates the following principles:

In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

DHS filed a petition for the involuntary termination of Father's parental rights to Child on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will

- 3 -

> not be remedied by the parent.

> \* \* \*

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his…parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

> To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a

- 4 -

settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his…conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his…parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include

- 5 -

acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

With respect to an incarcerated parent, this Court has stated:

> [I]ncarceration alone does not provide sufficient grounds for the termination of parental rights. Likewise, a parent's incarceration does not preclude termination of parental rights if the incarcerated parent fails to utilize given resources and fails to take affirmative steps to support a parent-child relationship. As such, a parent's responsibilities are not tolled during incarceration.

*In re Adoption of K.J., supra* at 1133 (internal citations omitted).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability

are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his... rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a

genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his...ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with...her physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of his...child is converted, upon the failure to fulfill his...parental duties, to the child's right to have proper parenting and fulfillment of...her potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Vincent Furlong, we conclude Father's issues merit no relief. The Juvenile Court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Juvenile Court Opinion, filed December 30, 2016, at 3-6) (finding: **(1)** DHS employee credibly testified that Father has been aware of his Family Service Plan ("FSP") goals since September 2014, when test

confirmed Father's paternity; Father's primary goal was housing, and he failed to provide proof of suitable housing to DHS; Father's additional FSP goals included visitation, parenting classes, and mental health counseling; Father did not complete mental health assessment, he consistently broke visitation appointments, and he failed to provide proof of employment to DHS; police arrested Father in April 2016 for drug offenses, and Father was incarcerated at time of termination hearing; while incarcerated, Father did not request visits with Child and did not send Child cards; Father did not have reasonable plan for housing upon his release from imprisonment; Father failed to remedy conditions which led to Child's placement in foster care, and he is unable to and refuses to remedy these conditions within reasonable period of time; **(2)** DHS employee credibly testified that it was in Child's best interest to change permanency goal to adoption and to terminate Father's parental rights; DHS representative testified Child has strong bond with her foster parents, who are capable of addressing Child's needs; Child does not have strong bond with Father; Child would not suffer irreparable harm if court terminated Father's parental rights to Child, and termination would be in Child's best interest). Accordingly, we affirm on the basis of the Juvenile Court opinion.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/28/2017

**THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY**

**IN THE COURT OF COMMON PLEAS**

| | | |
|---|---|---|
| **IN THE INTEREST OF:** | : | |
| **K.M.G., A Minor** | : | **FAMILY COURT DIVISION** |
| | : | **CP-51-AP-0000026-2015** |
| | : | **CP-51-DP-0002367-2013** |
| | : | **FID-51-FN-004216-2013** |
| | : | **3535 EDA 2016** |
| | : | |
| **APPEAL OF:** | : | |
| **J.L.C.R., Father** | : | |

## OPINION

## PROCEDURAL HISTORY

On October 14, 2016, the Court held a hearing on the Petition to Terminate the Parental Rights of the Appellant J.L.C.R., the biological father ("Father"), of K.M.G. a/k/a K.G. age 3 ("Child"). Although incarcerated, Father was present at the hearing and represented by counsel. After a full hearing on the merits, the Court found clear and convincing evidence to involuntarily terminate the parental rights of Father as to Child.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Father's Statement of Matters Complained of on Appeal is set forth in verbatim as follows:

1. Whether the trial court committed reversible error, when it involuntarily terminated father's parental rights where such determination was not supported by clear and convincing evidence under the adoption act, 23 Pa. C.S.A. § 2511(a)(1) and (2).

2. Whether the trial court committed reversible error when it involuntarily terminated father's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the child as required by the adoption act, 23 Pa. C.S.A. § 2511(b).

3. Whether, the trial court erred because the evidence was overwhelming and undisputed that father demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with his child.

## FINDINGS OF FACT

On December 9, 2013, Child was adjudicated dependent. On May 30, 2014, the Achieving Reunification Center (ARC) changed Father and Mother's statuses to inactive due to inconsistent compliance. On June 9, 2014, the Father's status was closed due to the Father declining ARC services. On September 30, 2014, another permanency review hearing was held for the Child and it was determined pursuant to paternity testing that J.L.C.R. was the father of the Child. Due to Mother and Father's consistent inability to meet parenting objectives, on January 13, 2016, DHS filed petitions to change the Child's goal to adoption and to terminate the parental rights of Mother and Father. On February 26, 2016, the Court involuntarily terminated the parental rights of Mother and continued the case as to Father. Although Father had communicated that he wanted to visit the Child, Father routinely missed visitation appointments; failed to provide any proof of employment; obtain appropriate housing nor did he engage in mental health treatment. Ultimately, the Court on May 2, 2016, permitted the Child to relocate to Florida with the Child's foster parents. (Statement of Facts: Petition for Involuntary Termination of Parental Rights)

On April 14, 2016, Father was incarcerated for drug offenses of which DHS was not notified until May 2016. On August 24, 2016, a DHS representative met with the Father during which time Father made no indication that he desired to visit the Child. (N.T. 10/14/2016 p. 62 lines 1-25). On October 14, 2016, the Court held a hearing on the Petition to Terminate the Parental Rights of the Father. Although incarcerated, Father was present

at the hearing and represented by counsel. After a full hearing on the merits, the Court found clear and convincing evidence to involuntarily terminate the parental rights of Father as to Child. (Statement of Facts: Petition for Involuntary Termination of Parental Rights)

## LEGAL ANALYSIS

In articulating the appellate standard of review of a termination of parental rights the Superior Court has stated:

> We are bound by the findings of the trial court, which have adequate support in the record so long as the findings do not evidence a capricious disregard for competent and credible evidence. *In re Diaz*, 447 Pa. Super. 327, 669 A. 2d 372 (Pa. Super. 1995). Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of the witnesses and all conflicts in testimony are to be resolved by the finder of fact. In re B.G.S., 418 Pa. Super. 588, 614 A.2d 1161 (Pa. Super. 1992).
> In re Adoption of A.C.H., 2002 Pa. Super 218, P4; 803 A.2d 224, 228 (2002)

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. *See In re K.C.W.*, 456 Pa. Super. 1, 689 A.2d 294, 298 (1997). Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. *Id.* Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give a jury verdict. *See In re Child M.*, 452 Pa.Super. 230, 681 A.2d 793, 800 (1996). We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence. *See In re Matsock*, 416 Pa. Super. 520, 611 A.2d 737, 742 (1992). *In re C.S.*, 2000 PA Super 318, 761 A. 2d 1197, 1199 (Pa. Super. 2000). It is clear that in a termination proceeding, the focus is on the conduct of the parents. *In the Interest of A.L.D.*, 2002 PA Super 104, 797 A. 2d 326 (Pa.Super.2002). *In the Interest of M.B.*, *449 Pa. Super. 507, 674A.2d 702 (Pa.Super. 1996).*
> In the Matter of B.L.W., 2004 Pa. Super 30, P9; 843 A.2d 380, 383 (2004)

The Child was adjudicated dependent on December 9, 2013. The record demonstrates Father's ongoing unwillingness to provide care or control for the Child or to perform any parental duties and his failure to remedy the conditions that brought the Child into care. The documents and testimony discussed below provided the

Court clear and convincing evidence that termination of the Father's parental rights would be in the best interest of the Child. Consequently, this Court found clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa. C.S.A. §§2511(a)(1) and (2)[1] and 23 Pa.C.S.A. § 2511(b)[2].

Based upon this testimony elicited at the Termination Hearing as well as the documents in evidence, this Court found clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1) and (2) as Father had failed to remedy the conditions that brought the Child into care. His unwillingness to cooperate with social services as to mental health counselling and housing demonstrated the Father's inability or refusal to remedy the conditions within a reasonable period of time that had led to the Child being adjudicated dependent in 2013.

At the hearing on October 14, 2016, the DHS worker testified that Father had been aware of his FSP goals since a paternity test had confirmed that he was the biological father of Child. (N.T. 10/14/2016 p. 11, lines 1-25). The DHS Worker testified Father's primary

---

[1] (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

[2] (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

FSP goal was housing. (N.T. 10/14/2016 p. 12 lines 1-25). Father never provided proof of housing to DHS (N.T. 10/14/2016 p. 85 lines 1-25). The DHS Worker also testified that in addition to housing other FSP goals were visitation, parenting counseling, and mental health counseling. (N.T. 10/14/2016 p. 13 lines 1-10). Although Father received a Certificate of Completion in reference to a parenting class, the DHS Worker testified that he did not complete a mental health assessment despite being referred to ARC. (N.T. 10/14/2016 p. 18 lines 1-25). The DHS Worker testified that DHS sought to accommodate the Father's work schedule by arranging visitation on Saturdays but that Father consistently broke appointments and failed to provide proof of employment. (N.T. 10/14/2016 p. 23 lines 1-25) (N.T. 10/14/2016 p. 24 lines 1-25). Ultimately, Father was arrested in in April 2016 and charged with drug related offenses. He was incarcerated at the time of the hearing on October 14, 2016. During Father's incarceration, the DHS Worker testified that the Father did not request to visit the Child. (N.T. 10/14/2016 p. 62 lines 1-25). During Father's incarnation the DHS Worker testified that he did not send cards to the Child. (N.T. 10/14/2016 p. 76 lines 1-25). The DHS Worker also testified that Father did not have any reasonable plans for housing when eventually released from prison. (N.T. 10/14/2016 p. 82 lines 1-25).

The Court further found there was no strong bond between Father and Child, and terminating parental rights would not cause the Child irreparable harm and would be in the best interest of the Child pursuant to 23 Pa. C.S.A. §2511(b). At the Termination Hearing, the DHS Worker testified that in that it was in the best interest of the Child that the goal be changed to adoption and that the Father's rights be terminated; that the Child would not suffer permanent emotional harm if the Father's rights were terminated and that there

existed a strong bond between the Child and her foster parents, who were capable of addressing the Child's medical needs, educational needs and therapeutic needs. (N.T. 10/14/2016 p.72 lines 1-25). (N.T. 10/14/2016 p. 73 lines 1-25). (N.T. 10/14/2016 p. 76 1-25).

The testimony of the DHS Worker was deemed to be credible and accorded great weight. The testimony before the Court on October 14, 2016 was clear and convincing. Father did not remedy the conditions that caused his Child to come into care and Father continued to be unable to provide care for his Child, warranting the involuntary termination of the Father's parental rights pursuant to 23 Pa. C.S. §§2511(a)(1) and (2). The Court further concluded that the termination of the Father's parental rights would be in the best interest of the Child.

## CONCLUSION

This Court, after careful review of the findings of fact and the testimony presented during the Termination Hearing on October 14, 2016, found by clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa. C.S. 2511(a)(1) and (2). This court further found pursuant to 23 Pa. C.S. 2511(b), termination of the mother's parental rights would not have a detrimental effect on the Child and would be in the Child's best interest. For the foregoing reasons, this Court respectfully requests that the October 14, 2016 Order terminating Father's parental rights to the Child be **AFFIRMED.**

**BY THE COURT**

Date: 12-30-16

Vincent Furlong, J.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above-captioned Opinion was filed on the undersigned date in the Court of Common Pleas of Philadelphia County Family Court Division and served by first class mail upon the following:

Suzanne M. Pontius, Esquire
Philadelphia Law Department
One Parkway
1515 Arch Street-16th Floor
Philadelphia, PA 19102
Attorney for DHS

Tara Amoroso, Esquire
Defender Association-Child Advocacy Unit
1441 Sansom Street, 9th Floor
Philadelphia, PA 19102
Child Advocate

Melanie Katz Silverstein, Esquire
1515 Market Street-Suite 1200
Philadelphia, PA 19102
Attorney for the Father Appellant

Lisa Marie Visco, Esquire
1800 JFK Blvd, Suite 300
Philadelphia, PA 19103
Attorney for the Mother

Date: 12-30-16

_____
Vincent Furlong, J.